## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| BTWW RETAIL, L.P., *et al.* | § | Case No. 08-35725-BJH-11 |
| | § | |
| Debtors. | § | (JOINTLY ADMINISTERED) |
| | § | |

## FIRST AMENDED CONSOLIDATED JOINT PLAN OF LIQUIDATION OF THE DEBTORS TOGETHER WITH THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### October 29, 2009

WARNER STEVENS, L.L.P.
301 Commerce Street, Suite 1700
Fort Worth, Texas 76102
Tel.: (817) 810-5250
Fax: (817) 810-5255
Michael D. Warner
State Bar No. 00792304
Alexandra P. Olenczuk
State Bar No. 24033924


Counsel to the Debtors

COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, New York 10036-7798
Tel.:(212) 479-6000
Fax: (212) 479-6275
Jay R. Indyke
Eric Haber

-and-

KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel.: (817) 332-2500
Fax: (817) 878-9280
Clay M. Taylor
State Bar No. 24003261

Counsel to the Official Committee of Unsecured Creditors

**TABLE OF CONTENTS**

PAGE

ARTICLE I - DEFINITIONS ....................................................................... 1

ARTICLE II - SUBSTANTIVE CONSOLIDATION .................................. 9

    2.1    Effect of Substantive Consolidation .................................... 9

    2.2    Approval by the Court ............................................................ 9

ARTICLE III - TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS AND PRIORITY TAX CLAIMS ..................................... 10

    3.1    Administrative Claims ........................................................... 10

    3.2    Bar Date for Administrative Claims ..................................... 10

    3.3    Fee Claims ............................................................................. 10

    3.4    Bar Date for Fee Claims ....................................................... 11

    3.5    Priority Tax Claims ............................................................... 11

ARTICLE IV - CLASSIFICATION OF CLAIMS AND INTERESTS ................. 11

    4.1    Classes .................................................................................... 11

    4.2    General Rules of Classification ............................................ 11

ARTICLE V - TREATMENT OF CLAIMS AND INTERESTS ....................... 12

    5.1    Priority Non-Tax Claims (Class 1) ....................................... 12

    5.2    Secured Claims (Class 2) ...................................................... 12

    5.3    General Unsecured Claims (Class 3) .................................... 12

    5.4    Subordinated Claims (Class 4) ............................................. 13

    5.5    Intercompany Claims (Class 5) ............................................ 13

    5.6    Interests (Class 6) ................................................................. 13

ARTICLE VI - ACCEPTANCE OR REJECTION OF PLAN ....................... 13

    6.1    Voting of Claims .................................................................. 13

    6.2    Acceptance by a Class .......................................................... 13

    6.3    Presumed Acceptance of Plan .............................................. 14

    6.4    Presumed Rejection of Plan ................................................. 14

ARTICLE VII - IMPLEMENTATION OF THIS PLAN ............................... 14

    7.1    Dissolution of Debtors ......................................................... 14

    7.2    Liquidation Trust .................................................................. 14

    7.3    Powers ................................................................................... 15

| | | |
|---|---|---|
| 7.4 | Liquidation Trustee | 15 |
| 7.5 | Investments | 18 |
| 7.6 | Resignation, Death or Removal of Liquidation Trustee | 18 |
| 7.7 | Tax Treatment of Liquidation Trust | 18 |
| 7.8 | Liquidation Trust Interests | 19 |
| 7.9 | Dissolution of the Committee; The Oversight Committee | 19 |
| 7.10 | The Disbursing Agent | 20 |
| 7.11 | Funding of this Plan | 22 |
| 7.12 | Litigation Causes of Action | 23 |
| 7.13 | Wind-down Reserve | 24 |
| 7.14 | Distribution Fund | 24 |
| 7.15 | Exemption from Certain Transfer Taxes | 24 |
| 7.16 | Employee Programs | 24 |
| 7.17 | Non-Cash Property | 25 |
| 7.18 | Withdrawal of this Plan | 25 |
| 7.19 | Cramdown | 25 |
| 7.20 | Release of Debtor Guaranty | 26 |
| 7.21 | Preservation of Insurance Policies | 26 |
| 7.22 | Post-Effective Date Costs | 26 |
| 7.23 | Retention of Actions and Defenses | 26 |
| ARTICLE VIII - | DISTRIBUTIONS | 27 |
| 8.1 | Objections to and Estimation of Claims | 27 |
| 8.2 | No Recourse to Debtors, Liquidation Trust, Liquidation Trustee or Oversight Committee | 27 |
| 8.3 | Transmittal of Distributions and Notices | 28 |
| 8.4 | Unclaimed Property | 28 |
| 8.5 | Withholding Taxes and Expenses of Distribution | 28 |
| 8.6 | Disputed Payment | 28 |
| 8.7 | Distribution Record Date | 29 |
| 8.8 | Setoffs | 29 |

| | | |
|---|---|---|
| 8.9 | Miscellaneous Distribution Provisions | 29 |
| ARTICLE IX - | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 30 |
| 9.1 | Assumption or Rejection of Executory Contracts and Unexpired Leases | 30 |
| 9.2 | Bar to Rejection Damages | 30 |
| 9.3 | Post-Petition Executory Contracts or Unexpired Leases | 30 |
| ARTICLE X - | EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS | 31 |
| 10.1 | Surrender of Securities and Cancellation of Existing Securities and/or Related Agreements | 31 |
| 10.2 | Releases, Exculpation and Related Injunction | 31 |
| ARTICLE XI - | CONDITIONS TO CONFIRMATION AND CONSUMMATION | 34 |
| 11.1 | Conditions to Consummation | 34 |
| 11.2 | Waiver of Conditions to Consummation | 34 |
| 11.3 | Effect of Nonoccurrence of the Conditions to Consummation | 35 |
| ARTICLE XII - | RETENTION OF JURISDICTION | 35 |
| ARTICLE XIII - | ADMINISTRATIVE PROVISIONS | 37 |
| 13.1 | Amendments | 37 |
| 13.2 | Post-Effective Date Expenses | 37 |
| 13.3 | Successors and Assigns | 38 |
| 13.4 | Governing Law | 38 |
| 13.5 | Courts of Competent Jurisdiction | 38 |
| 13.6 | Corporate Action | 38 |
| 13.7 | Effectuating Documents and Further Transactions | 38 |
| 13.8 | Cramdown | 38 |
| 13.9 | Confirmation Order and Plan Control | 39 |
| 13.10 | Severability | 39 |
| 13.11 | Rules of Construction | 39 |
| 13.12 | Notices | 39 |
| 13.13 | No Admissions | 41 |

# INTRODUCTION

BTWW Retail, L.P., Corral West Ranchwear, LLC, CWR Workwear Depot, LLC, and Corral West Ranchwear Catalog, LLC, as debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors of the Debtors (the "Committee") propose the following first amended consolidated joint plan of liquidation for the resolution of the outstanding claims and interests in the Debtors (the "Plan").

Reference is made to the First Amended Disclosure Statement For Consolidated Joint Plan of Liquidation, dated October 29, 2009, for a discussion of the Debtors' history, business, capital structure, historical financial information, and for a summary and analysis of this Plan.

All creditors entitled to vote on this Plan should review the Disclosure Statement before voting to accept or reject this Plan. Documents referenced in this Plan and/or the Disclosure Statement are also available for review.

# ARTICLE I - DEFINITIONS

The capitalized terms set forth below shall have the following meanings:

1.1 **Administrative Claim** means an unsecured Claim, other than a Fee Claim, for payment of costs or expenses of administration specified in sections 503(b)(9) and 507(a)(1) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors; and (b) all fees and charges assessed against the Estates pursuant to section 1930 of title 28 of the United States Code.

1.2 **Allowed** means, with respect to any Claim, a Claim, subject to Section 8.1 of this Plan, (i) which is currently scheduled as undisputed, non-contingent and liquidated in the Schedules and as to which neither a proof of Claim nor objection thereto has been timely filed; (ii) as to which a proof of Claim has been timely filed in a liquidated, non-contingent amount and either (a) no objection thereto has been timely filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Court; (iii) which has been expressly allowed under the provisions of this Plan; or (iv) which is an Administrative Claim approved by Final Order of the Court. An Allowed Claim: (y) includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires; and (z) shall be net of any valid setoff amount against such Claim based on a valid offset right of the Debtors under this Plan, which valid setoff amount shall be deemed to have been setoff in accordance with the provisions of this Plan. Unless otherwise specified herein or by order of the Court, Allowed Administrative Claims and Allowed Claims shall not, for any purpose under this Plan, include interest on such Administrative Claims or Claims on or after the Petition Date.

1.3 **Available Cash** means as determined from time to time by the Liquidation Trustee in consultation with the Oversight Committee, all unrestricted Cash of the Estates on or after the Effective Date, after deduction of, without duplication: (a) amounts to be distributed to holders of Fee Claims; (b) actual post-Petition Date expenses and liabilities of the Estates that have not been paid, including expenses which accrued prior to the Effective Date; (c) amounts

held in the Wind-down Reserve; (d) Cash to be distributed to or reserved for holders of Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims; (e) the Wells Fargo Settlement Fund; (f) the Kestrel Settlement Fund; and (g) any recoveries from the Litigation Causes of Action.

1.4    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended.

1.5    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the local rules of the Court now in effect or hereafter amended.

1.6    **Bar Date** means the applicable deadline established for the filing of proofs of claim.

1.7    **BTWW Retail** means BTWW Retail L.P.

1.8    **Business Day** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

1.9    **Cash** means cash and cash equivalents, including, but not limited to, bank deposits, checks, and other similar items.

1.10    **Chapter 11 Cases** means the chapter 11 cases of BTWW Retail, Corral West Ranchwear, LLC, CWR Workwear Depot, LLC, and Corral West Ranchwear Catalog, LLC, jointly administered under Case No. 08-35725-BJH-11, pending before the Court.

1.11    **Claim** means a claim against a Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

1.12    **Class** means a group of Claims or Interests described in Articles III and IV of this Plan.

1.13    **Committee** has the meaning ascribed to such term on the first page of this Plan.

1.14    **Confirmation Date** means the date the Court enters the Confirmation Order on its docket.

1.15    **Confirmation Hearing** means the hearing by the Court to consider confirmation of this Plan.

1.16    **Confirmation Order** means the order of the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.17    **Court** means the United States Bankruptcy Court for the Northern District of Texas, or any other court exercising competent jurisdiction over the Chapter 11 Cases or any proceeding therein.

1.18    **CWR Holdings** means CWR Holdings, Inc.

1.19     **Debtors** has the meaning ascribed to such term on the first page of this Plan (each of the Debtors is individually referred to herein as a Debtor).

1.20     **Disallowed Claim** means a Claim or portion thereof that (i) has been disallowed by a Final Order; (ii) is identified in the Schedules of Assets and Liabilities in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of Claim was not filed by the applicable Bar Date; or (iii) is not identified in the Schedules of Assets and Liabilities and as to which no proof of Claim has been filed or deemed filed by the applicable Bar Date.

1.21     **Disbursing Agent** means North American Credit Services, LLC or any third party designated by the Committee, in its sole discretion, to serve as a disbursing agent under this Plan.

1.22     **Disclosure Statement** means the Disclosure Statement that relates to this Plan and is approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

1.23     **Disputed Claim** means any Claim which has not become Allowed and which is not a Disallowed Claim. Nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is or becomes, prior to 30 days after the Effective Date, the subject of an application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim shall be deemed to constitute a Disputed Claim.

1.24     **Distribution** means the distribution in accordance with this Plan of Cash or other property, as the case may be, or the Cash or other property so distributed.

1.25     **Distribution Address** means the address set forth in the relevant proof of claim. If no proof of claim is filed in respect to a particular Claim, such defined term means the address set forth in the relevant Debtor's Schedules of Assets and Liabilities.

1.26     **Distribution Date** means (a) with respect to Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims, the date that is the later of: (i) the Effective Date (or as soon thereafter as reasonably practicable); and (ii) the date (or as soon thereafter as reasonably practicable) such Claims become Allowed Claims or otherwise become payable under this Plan, (b) with respect to Fee Claims, the date (or as soon thereafter as reasonably practicable) that such Claims are allowed by Final Order of the Court, and (c) with respect to General Unsecured Claims (subject to the priority scheme set forth in this Plan), (i) initially, as soon as reasonably practicable after the later of (aa) the Effective Date and (bb) 10 days after the date on which the Court has entered the Estimation Order and such order becomes a Final Order, and (ii) subsequently, the first Business Day that is three (3) full months after the immediately preceding Distribution Date for Class 3, or in the case of either (i) or (ii), such earlier or later date established by the Court or designated by the Liquidation Trustee in his/her reasonable discretion after consultation with the Oversight Committee. With respect to Secured

Claims, occurrence of the Distribution Date shall be subject, if applicable, to the sale of the relevant collateral.

1.27    **Distribution Fund** means the fund which shall be established on the Effective Date by the Liquidation Trustee to pay (in the event any payments are to be made to holders of such Claims) Class 3 General Unsecured Claims pursuant to the provisions of this Plan.

1.28    **Distribution Record Date** means, initially, the Confirmation Date, and with respect to each Distribution Date after the first Distribution Date, a prior Business Day chosen by the Liquidation Trustee after consultation with the Oversight Committee.

1.29    **Effective Date** means: (a) if no stay of the Confirmation Order is in effect, the first Business Day after the date each of the conditions set forth in Section 11.1 hereof has been satisfied or waived as set forth in Section 11.2 hereof, or such later date as may reasonably be determined by the Plan Proponents and noted in a Notice of Effective Date filed with the Court; or (b) if a stay of the Confirmation Order is in effect, on the first Business Day (or such later date as may reasonably be determined by the Plan Proponents) after the later of: (i) the date such stay is vacated or any appeal, rehearing, remand or petition for certiorari is resolved in a manner that does not reverse or materially modify the Confirmation Order; and (ii) the date each condition set forth in Section 11.1 hereof has been satisfied or waived as set forth in Section 11.2 hereof.

1.30    **Estate** means the relevant estate created in each of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.31    **Estimation Order** means an order or orders of the Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the aggregate (and if applicable, individual) face amount of Disputed Claims in each relevant Class. "Estimation Order" includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

1.32    **Fee Claim** means a Claim for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Cases.

1.33    **Final Order** means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek review or rehearing or petition for certiorari has expired.

1.34    **General Unsecured Claim** means any Claim that is not: (a) an Administrative, Priority Non-Tax, or Priority Tax Claim; (b) a Secured Claim; (c) a Fee Claim; or (d) a Claim included within any other Class of Claims or Interests.

1.35    **Intercompany Claim** means a Claim of any Debtor against another Debtor.

1.36    **Interest** means an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in a Debtor, including, but not limited to, the shares of stock of the Debtors.

1.37 **Kestrel Cash Collateral Orders** means (i) the Order Approving Agreement Pursuant To Rule 4001(D) Authorizing And Ordering The Debtors To Make Adequate Protection Payments To Kestrel Capital, L.P., entered by the court on April 2, 2009 (Docket No. 436) and (ii) the Second Agreement Between The Debtors, Committee And Kestrel Capital, L.P. Consenting To The Continued Use Of Cash Collateral And Providing Adequate Protection, entered by the court on May 8, 2009 (Docket No. 497).

1.38 **Kestrel Settlement Fund** means the amount of three hundred thousand dollars ($300,000) currently being held in escrow by Debtors' counsel Warner Stevens, L.L.P. pursuant to the Kestrel Cash Collateral Orders which shall be distributed in accordance with this Plan.

1.39 **Lien** means a charge against, a security interest in or encumbrance upon property of the Debtor to secure payment of a debt or performance of an obligation.

1.40 **Liquidation Trust** means the trust created pursuant to Section 7.2 herein.

1.41 **Liquidation Trust Agreement** means the Liquidation Trust Agreement to be dated as of the Effective Date establishing the terms and conditions of the Liquidation Trust in form and substance identical in all material respects to the proposed Liquidation Trust Agreement that is annexed hereto as Exhibit "A".

1.42 **Liquidation Trust Assets** means all assets of the Debtors and Estates existing as of the Effective Date, including, without limitation, (i) cash and accounts, including, without limitation, any and all moneys held in escrow or separate segregated accounts during the pendency of the Chapter 11 Cases, (ii) Litigation Causes of Action, and (iii) any and all other property interests, rights, claims, defenses and causes of action of the Debtors or Estates.

1.43 **Liquidation Trustee** means the trustee of the Liquidation Trust, as designated in Section 7.4 of this Plan and the Liquidation Trust Agreement.

1.44 **Litigation Causes of Action** means any and all adversary proceedings which may be brought by the Liquidation Trustee with the approval of the Oversight Committee consisting of fraudulent conveyance actions which may be commenced pursuant to (i) sections 548(a)(1)(B) and 550(a) of the Bankruptcy Code; (ii) sections 548 (a)(1)(A) of the Bankruptcy Code and 550(a) of the Bankruptcy Code; (iii) sections 544(b)(1) and 550(a) of the Bankruptcy Code and Texas Business and Commerce Code Sections 24.005(a)(2); (iv) sections 544(b)(1) and 550(a) of the Bankruptcy Code and Texas Business and Commerce Code Section 24.006(a)(1); (v) sections 544(b)(1) of the Bankruptcy Code and Texas Business and Commerce Code Section 24.006(a)(2); and/or (vi) sections 544(b)(1) and 550(a) of the Bankruptcy Code and Texas Business and Commerce Code Section 24.005(a)(1) seeking recovery of any one or all of the following payments by one or more of the Debtors:

(a) dividends paid to the following holders of CWR Holdings preferred stock just prior to or contemporaneously with the merger of BTWW Retail and subsidiaries and CWR Holdings and subsidiaries :

Sage Capital Partners, L.P.
Sage Capital Partners - IA, L.P.

SCP Corral West I, L.P.
SCP Corral West II, L.P.
Bradley W. de Koning
Daniel S. Gardenswartz
Mark S. Vidergauz
ARC Business Advisors LLC; and

      (b)     payments from the redemption of common stock (i) made to the following holders of CWR Holdings common stock just prior to or contemporaneously with the merger of BTWW Retail and subsidiaries and CWR Holdings and subsidiaries:

Les Ball
Larry Hager
Steve Farkas
Victor P. Spencer
Jim Lawrence
Lorado Reetz
Karlin Reetz
David Denson; and

      (ii) and subsequently to Cheryl Sergeant; and

      (c)     management or other fees paid to (i) Sage Capital Partners, L.P. and/or affiliated companies and (ii) Luther King Capital Management and/or related companies.

      1.45   **Net Proceeds** means the Cash consideration received from the sale or transfer of property of the Estates or the conversion of such property to Cash in some other manner as contemplated in this Plan (including, without limitation, any recoveries from the Litigation Causes of Action), whether occurring prior to or after the Effective Date, less the reasonable, necessary and customary expenses attributable to such sale, transfer, collection or conversion, including costs of curing defaults under executory contracts or unexpired leases that are assigned, paying personal property or other taxes accruing in connection with such sale, transfer or conversion of such property, brokerage fees and commissions, collection costs, reasonable attorneys' fees and expenses and any applicable taxes or other claims of any governmental authority in connection with such property and any escrows or accounts established to hold funds for purchase price adjustments, indemnification claims, or other purposes in connection with such sale, transfer or collection.

      1.46   **Oversight Committee** means the committee comprised of former members of the Committee pursuant to Section 7.9.2 of this Plan to oversee the activities of the Liquidation Trustee and the affairs of the Liquidation Trust.

      1.47   **Person** means any individual, corporation, partnership, association, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, the Committee, Interest holders, holders of Claims, current or former employees of any Debtor, or any other entity.

1.48    **Petition Date** means November 3, 2008.

1.49    **Plan** means this Consolidated Joint Plan of Liquidation, dated as of the date set forth on the first page hereof, for each of the Debtors, together with any amendments or modifications hereto as may be filed hereafter in accordance with the terms of this Plan, the Bankruptcy Code and other applicable law.

1.50    **Plan Proponents** means the Debtors and the Committee.

1.51    **Priority Non-Tax Claim** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; (b) a Priority Tax Claim; or (c) a Fee Claim.

1.52    ~~Priority Tax Claim means a Claim entitled to priority pursuant to section~~ 507(a)(8) of the Bankruptcy Code.

1.53    **Ratable, Ratably or Ratable Share** means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of: (a) Allowed Claims plus (b) Disputed Claims (in their aggregate amount) in such Class as of any date of determination.

1.54    **Released Party** means, solely as provided for in Sections 10.2(b) and 10.2(f) of this Plan and expressly limited to those acts or omissions, transactions or occurrences identified therein, the Debtors, the Committee and each of their former and current members thereof (in their capacity as such) and any current or former agent, representative, employee benefit plan fiduciary, employee benefit plan administrator, officer, director, employee, attorney, accountant, financial advisor or other professional of the Debtors or the Committee and members thereof, but only if that such party listed in this paragraph served in such capacity after the Petition Date.

1.55    **Schedules of Assets and Liabilities** means Debtors' schedules of assets and liabilities filed with the Court pursuant to sections 521(1) and 1106(a)(2) of the Bankruptcy Code, as the same may be amended thereafter.

1.56    **Secured Claim** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of any of the Debtors in and to property of the Estates, to the extent of the value of the holder's interest in such property as of the relevant determination date. The defined term Secured Claim includes any Claim that is: (i) subject to an offset right under applicable law; and (ii) a secured claim against any of the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code. Such defined term shall not include for voting or Distribution purposes any such Claim that has been or will be paid in connection with the cure of defaults under an assumed executory contract or unexpired lease under section 365 of the Bankruptcy Code.

1.57    **Subordinated Claims** means any Claim against any of the Debtors whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent that such attorneys' fees are unreasonable, punitive in nature or not compensable under the Bankruptcy

Code or case law in the Fifth Circuit), or for multiple, exemplary or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed, and all claims against any of the Debtors of the type described in section 510(b) of the Bankruptcy Code relating to equity interests (including all Interests).

1.58  **Substantive Consolidation** means the consolidation of the Chapter 11 Cases and the combining of the Estate of each Debtor, for the purposes of this Plan and the distributions to be made thereunder, by aggregating assets and liabilities of each Estate and eliminating cross corporate guaranties and Intercompany Claims pursuant to Article II hereof.

1.59  **Unclaimed Property** means any Cash or other distributable property unclaimed after 120 days following a Distribution Date as provided in Section 8.4 of this Plan. Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts by the Disbursing Agent or Liquidation Trustee to locate such address which were reasonable under the circumstances.

1.60  **United States Trustee** means the Office of the United States Trustee for the Northern District of Texas.

1.61  **Wells Fargo Financing Order** means the Joint Stipulation and Agreed Final Order for Authorization to (i) Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364; (ii) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (iii) Grant Priming Liens and Super-Priority Claims to Agent and Lender Pursuant to 11 U.S.C. § 364(c) and (d); (iv) Provide Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; (v) Modifying the Automatic Stay, and (vi) Authorizing Debtors to Enter Into Post-Petition Agreements with Agent and Lender, entered by the Court on December 18, 2008 (Docket No. 253).

1.62  **Wells Fargo Settlement Fund** means the amount of two hundred and fifty thousand dollars ($250,000) currently being held in escrow by Committee counsel Cooley Godward Kronish LLP pursuant to the Wells Fargo Financing Order which shall either (i) be used by the Liquidation Trust to pay the fees and expenses incurred by the Liquidation Trust's professionals in prosecuting the Litigation Causes of Action, or (ii) if the Liquidation Trustee elects to do so with the approval of the Oversight Committee as provided for in Section 7.12 of this Plan, all or part of such amount shall be distributed in accordance with this Plan.

1.63  **Wind-down Budget** means a budget to be prepared jointly by the Debtors and the Committee, estimating the funds necessary to administer this Plan and wind up the Debtors' affairs, including, but not limited to, the costs of holding and liquidating Estate property, objecting to Claims, making the Distributions required by this Plan, prosecuting Litigation Causes of Action, subject to the Wells Fargo Settlement Fund and any recoveries from the Litigation Causes of Action, in accordance with this Plan, paying taxes, filing tax returns, paying professionals' fees and expenses, the Liquidation Trustee and the Disbursing Agent, providing

for the purchase of errors and omissions insurance, bonds and/or other forms of indemnification for the Liquidation Trustee, and other necessary and usual business expenses.

1.64     **Wind-down Reserve** means the reserve to be established on the Effective Date by the Liquidation Trustee, in consultation with the Oversight Committee in accordance with the terms of the Wind-down Budget to fund the winding up of the affairs of the Debtors and administering this Plan.  After the Effective Date, the Wind-down Reserve shall be supplemented to the extent considered necessary or desirable by the Liquidation Trustee (in consultation with the Oversight Committee) with proceeds of any collection, sale, liquidation, or other disposition of any non-Cash property of the Debtors existing on or created after the Effective Date, including, without limitation, Litigation Causes of Action.

## ARTICLE II – SUBSTANTIVE CONSOLIDATION

### 2.1     Effect of Substantive Consolidation

This Plan contemplates and is predicated upon entry of a Final Order of the Bankruptcy Court for the Substantive Consolidation of the Chapter 11 Cases into a single proceeding for all purposes with respect to confirmation and implementation of the Plan.  Pursuant to such Final Order and for purposes of these Chapter 11 Cases, on the Effective Date and upon the occurrence of all conditions to effectiveness as set forth in this Plan, these Chapter 11 Cases shall be substantively consolidated for all purposes.  As a result of the Substantive Consolidation: (i) all Intercompany Claims will be charged off, written off, or otherwise extinguished; (ii) all assets and liabilities of the Debtors will be merged or treated as though they were merged; (iii) any obligation of any of the Debtors will be deemed to be one obligation of the consolidated Debtors; (iv) any Claims filed or to be filed in connection with any such obligations will be deemed a Claim against the consolidated Debtors; (v) each and every Claim filed in the individual Chapter 11 Cases will be deemed filed against the consolidated Debtors in the consolidated Chapter 11 Cases; (iv) and for purposes of determining the availability of the right of setoff under under this plan pursuant to section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity.  In the event an order for Substantive Consolidation is denied, this Plan will be modified accordingly.

### 2.2     Approval by the Court

Unless the Bankruptcy Court has approved the Substantive Consolidation of these Chapter 11 Cases by a prior order, this Plan will serve as, and will be deemed to be, a motion for entry of an order substantively consolidating the Estates and these Chapter 11 Cases.  If no objection to Substantive Consolidation is timely filed and served by any holder of a Claim in a Class impaired by this Plan or before the voting deadline or such other date as may be established by the Bankruptcy Court, an order approving Substantive Consolidation (which may be Confirmation Order) may be entered by the Court.  If any such objections are timely filed and served, a hearing with respect to Substantive Consolidation and the objections thereto will be scheduled by the Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

# ARTICLE III - TREATMENT OF ADMINISTRATIVE CLAIMS, FEE CLAIMS AND PRIORITY TAX CLAIMS

Administrative Claims, Fee Claims and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article IV in accordance with section 1123(a)(1) of the Bankruptcy Code.

## 3.1    Administrative Claims

Unless otherwise provided for herein, each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid Allowed amount of such Administrative Claim in Cash on or as soon as reasonably practicable after the Distribution Date. Notwithstanding the immediately preceding sentence: (i) any Administrative Claims for goods sold or services rendered representing liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases involving trade, service or vendor Claims, subject to compliance with any applicable bar date, shall be paid by the Liquidation Trustee in the ordinary course in accordance with the terms and conditions of any agreements relating thereto; and (ii) Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees. Notwithstanding the foregoing, the holder of an Allowed Administrative Claim may receive such other, less favorable treatment as may be agreed upon by such holder and the Liquidation Trustee, with the consent of the Oversight Committee.

## 3.2    Bar Date for Administrative Claims

The Order Establishing Bar Date for Filing Certain Administrative Expense Claims and Approving Form and Manner of Notice Thereof entered April 9, 2009 [Dkt. No. 455], established April 24, 2009 (the "Administrative Claims Bar Date") as the bar date for filing all unpaid administrative claims arising before, from and after the Petition Date and before the Chapter 11 Administrative Claims Bar Date, including claims arising under section 503(b)(9) of the Bankruptcy Code, except for the administrative claims of professionals retained pursuant to sections 327 and 328 of the Bankruptcy Code, expenses of members of the Committee, and any fees or charges assessed against the Debtors under Chapter 123 of Title 28. Proofs of claim or applications for payment of Administrative Claims (other than Fee Claims) arising on or after April 24, 2009 before the Effective Date must be filed with the Court, with copies to the parties listed in Section 13.12, within thirty (30) days after the Effective Date. Any Person that fails to file such a proof of claim or application with the Court within that time shall be forever barred from asserting such an Administrative Claim against any of the Debtors, the Estates, or their property, or commencing or continuing any action, employment of process, or act to collect, offset, or recover any such Administrative Claim.

## 3.3    Fee Claims

Each holder of an Allowed Fee Claim for services rendered through the Effective Date shall receive 100% of the unpaid Allowed amount of such Claim in Cash on or as soon as reasonably practicable after the Distribution Date.

### 3.4 Bar Date for Fee Claims

All proofs or applications for payment of Fee Claims for services rendered through the Effective Date must be filed with the Court within forty-five (45) days after the Effective Date. Any Person or entity that fails to file such a proof of Fee Claim or application on or before such date shall be forever barred from asserting such a Fee Claim against any of the Debtors, the Estates, or their property, and the holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Fee Claim.

### 3.5 Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall be paid 100% of the unpaid amount of such Allowed Claim in Cash on or as soon as reasonably practicable after the Distribution Date. Any claim or demand for penalty relating to any Priority Tax Claim shall be disallowed, and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Released Parties, the Debtors' directors and officers, the Debtors' successor(s) or the Liquidation Trustee, or their property. Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim may receive such other less favorable treatment as may be agreed upon by the claimant and the Debtors or Liquidation Trustee, with the consent of the Oversight Committee.

## ARTICLE IV - CLASSIFICATION OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims, and Priority Tax Claims, as described in Article III, have not been classified and thus are excluded from the Classes that follow. The following table designates the Classes of Claims and specifies which of those Classes are (i) impaired or unimpaired by this Plan, and (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject this Plan.

### 4.1 Classes

|         | Class                    | Status     | Voting Rights          |
| ------- | ------------------------ | ---------- | ---------------------- |
| Class 1 | Priority Non-Tax Claims  | Unimpaired | No (deemed to accept)  |
| Class 2 | Secured Claims           | Unimpaired | No (deemed to accept)  |
| Class 3 | General Unsecured Claims | Impaired   | Yes                    |
| Class 4 | Subordinated Claims      | Impaired   | No (deemed to reject)  |
| Class 5 | Intercompany Claims      | Impaired   | No (deemed to reject)  |
| Class 6 | Interests                | Impaired   | No (deemed to reject)  |

### 4.2 General Rules of Classification

Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim has not been paid, released or otherwise satisfied and qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. For

voting and distribution purposes, a holder of more than one Claim in a Class shall be deemed to have a single Claim in such Class.

## ARTICLE V - TREATMENT OF CLAIMS AND INTERESTS

### 5.1    Priority Non-Tax Claims (Class 1)

Each holder of an Allowed Priority Non-Tax Claim shall be paid 100% of the unpaid amount of such Allowed Claim in Cash on or as soon as reasonably practicable after the applicable Distribution Date. Notwithstanding the foregoing, the holder of an Allowed Priority Non-Tax Claim may receive such other less favorable treatment as may be agreed upon by the claimant and the Debtors or Liquidation Trustee, with the consent of the Oversight Committee.

### 5.2    Secured Claims (Class 2)

Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code, each holder of an Allowed Secured Claim shall receive, at the Debtors' option and to the extent such Claim is secured by collateral in the possession of the Debtors: (a) 100% of the Net Proceeds from the sale of the relevant collateral, up to the unpaid allowed amount of such Claim (less the actual costs and expenses of disposing of such collateral); (b) the return of the relevant collateral; or (c) such alternative treatment as leaves unaltered the legal, equitable and contractual rights of the holder of such Allowed Secured Claim. Such Distribution shall be made on or as soon as reasonably practicable after the relevant Distribution Date (subject, if applicable, to the Debtors' receipt of the proceeds of the sale of the relevant collateral). To the extent a Claim is partially an Allowed Secured Claim based on an offset right and partially an Allowed Claim of another type, such Secured Claim shall be deemed to have been (x) set off (and thus no longer due and payable) only to the extent of the allowed amount of the allowed, liquidated, non-disputed, non-contingent claim owing to the Debtors, and (y) a Claim classified in another relevant Class for any excess of such Claim over the amount so set off. If a Claim is fully a Secured Claim based on an offset right, the allowance of such Claim shall not affect any obligations or liabilities due and payable (at such time) to the relevant Debtor that are in an amount in excess of the amount validly offset and the payment, in full and in cash, of all amounts due and owing as of the Effective Date to such Debtor, and the turnover of any property of such Debtor held by such claimant on account of any unliquidated, disputed or contingent right of setoff shall be a precondition of the allowance of such Secured Claim. Notwithstanding the foregoing, the holder of an Allowed Secured Claim may receive such other less favorable treatment as may be agreed to by such holder and the Liquidation Trustee, with the consent of the Oversight Committee. Any Allowed Claim based on any deficiency Claim by a holder of an Allowed Secured Claim shall become, and shall be treated for all purposes under this Plan as an Allowed General Unsecured Claim and shall be classified as a Class 3 Claim.

Class 2 Secured Claims include, among other claims, the secured ad valorem tax claims held by various Texas ad valorem taxing authorities. The Wells Fargo Financing Order provided, inter alia, for $700,000 of the sale proceeds to be set aside by the Debtors in a segregated account for the payment of Texas ad valorem taxes for the years 2008, 2009, and preceding years. The Debtors have paid on account of such secured claims approximately

$510,000, and shall continue to hold the balance of the funds in a separate segregated account. The balance of such funds shall be maintained in the separate segregated account following the Effective Date of the Plan and shall be made available for the payment of any valid and allowed Texas secured ad valorem taxes. No portion of the $190,000 reserve shall be available to satisfy other creditors' claims until all asserted Texas secured ad valorem taxes have been satisfied.

5.3     **General Unsecured Claims (Class 3)**

Each holder of an Allowed Claim in Class 3 shall, on or as soon as reasonably practicable after the initial Distribution Date and on each periodic Distribution Date thereafter, its Ratable Share of any cash Distribution from the Distribution Fund to holders of Allowed General Unsecured Claims. Each holder of an Allowed Class 3 Claim shall receive such Distributions in accordance with the provisions set forth in Section 7.14 of this Plan. Notwithstanding the foregoing, the holder of an Allowed Class 3 Claim may receive such other less favorable treatment as may be agreed to by the claimant and the Debtors or Liquidation Trustee, with the consent of the Oversight Committee.

5.4     **Subordinated Claims (Class 4)**

No property will be distributed to or retained by the holders of Allowed Claims in Class 4 on account of such Allowed Claims. All holders of such Allowed Claims in Class 4 shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover any such Claim as of the Effective Date.

5.5     **Intercompany Claims (Class 5)**

In connection with, and as a result of, the substantive consolidation of the Debtors' Estates and the Chapter 11 Cases, on the Confirmation Date or such other date as may be set by an order of the Court, but subject to the occurrence of the Effective Date, all Intercompany Claims shall be eliminated for the purpose of determining distributions from the Debtors' Estates, and the holders of Class 5 Claims shall not be entitled to, and shall not, receive or retain any property or interest in property on account of such Class 5 Claims.

5.6     **Interests (Class 6)**

The holders of Interests in Class 6 will not receive any distributions on account of Interests. The Plan Proponents will request that the Court make a finding that the Interests have no value for purposes of the "best interest" test under section 1129(a)(7) of the Bankruptcy Code. On the Effective Date, all Interests in the Debtors shall be deemed canceled. Holders of Interests in Class 6 shall be deemed to have rejected this Plan and shall not receive or retain any property or interest in property on account of their Class 6 Interests.

## ARTICLE VI - ACCEPTANCE OR REJECTION OF PLAN

6.1     **Voting of Claims**

Each holder of an Allowed Claim in Class 3 (and only such holders) shall be entitled to vote to accept or reject this Plan.

### 6.2    Acceptance by a Class

Consistent with section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount, and more than one-half in number of the holders, of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

### 6.3    Presumed Acceptance of Plan

~~Pursuant to section 1126(f) of the Bankruptcy Code, any Class that is unimpaired under a~~ plan is conclusively presumed to accept a plan. Accordingly, under this Plan, Classes 1 and 2 are unimpaired and conclusively presumed to accept this Plan.

### 6.4    Presumed Rejection of Plan

In accordance with section 1126(g) of the Bankruptcy Code, any Class that is to receive no distribution under a plan is conclusively presumed to reject a plan. Accordingly, Classes 4, 5, and 6 are conclusively presumed to reject this Plan and the votes of such holders will not be solicited with respect to such Claims.

## ARTICLE VII - IMPLEMENTATION OF THIS PLAN

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of this Plan.

### 7.1    Dissolution of Debtors

Within the respective times determined by the Liquidation Trustee as necessary or appropriate under the circumstances (including with respect to the pursuit of causes of action in the name of the Estate), the Debtors shall be dissolved without any further action by the former partners, members, stockholders, officers, or directors of the Debtors. The Liquidation Trustee may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to reflect the dissolutions of each of the Debtors under the state law where the respective Debtors were incorporated or organized. All applicable regulatory or governmental agencies shall accept any certificates of dissolution or other papers filed the Liquidation Trustee on behalf of the Debtors and shall take all steps necessary to allow and reflect the prompt dissolution of the Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates, except as the Liquidation Trustee may determine in his or her sole discretion.

### 7.2 Liquidation Trust

(a) **Creation of Liquidation Trust.** As of the Effective Date, the Liquidation Trust shall be created and established for the purpose of holding all Liquidation Trust Assets, liquidating the Liquidation Trust Assets, resolving all Disputed Claims, making all distributions to holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan and administering the Estates. The Liquidation Trust is being organized for the primary purpose of holding liquidating and distributing the assets transferred to it, with no objective to continue or engage in the conduct of a trade or business. The Liquidation Trust shall operate under the provisions of an agreement between the Debtors, the Committee and the Liquidation Trustee establishing the Liquidation Trust, a copy of which in substantially final form is annexed hereto as Exhibit "A".

After the Effective Date, the Debtors shall have no liability to holders of Claims or Interests other than as provided for in the Plan. The Plan will be administered and actions will be taken in the name of the Debtors or Liquidation Trust, as appropriate, through the Liquidation Trustee, irrespective of whether any of the Debtors have been dissolved.

(b) **Transfers to the Liquidation Trust.** On the Effective Date, subject to Section 7.7, the Debtors and Estates shall and shall be deemed to have transferred and/or assigned their respective Liquidation Trust Assets to the Liquidation Trust, free and clear of all Claims, Liens and contractually imposed restrictions, except for the rights to Distribution afforded to holders of Allowed Claims under the Plan.

(c) **Creation of Reserve Within Liquidation Trust.** As of the Effective Date, and upon receipt of the assets transferred pursuant to Section 7.2 hereof, the Liquidation Trustee, with the consent of the Oversight Committee, shall establish and use the transferred assets to fund the Wind-down Reserve in accordance with the terms hereof.

### 7.3 Powers

(a) **Directors, Officers and Employees.** On the Effective Date, the authority, power and incumbency of the persons then acting as directors of the Debtors shall be terminated and such directors shall be deemed to have resigned. The employment by the Debtors of each officer and all employees in the employment of the Debtors as of the Effective Date shall automatically on the Effective Date cease to be officers and employees of the Debtors. To the extent of the Liquidation Trust hires any prior employees of the Debtors, neither the Liquidation Trustee nor the Liquidation Trust shall be deemed a successor to the Debtors.

(b) **Succession by Liquidation Trustee.** Upon the Effective Date of this Plan, the Liquidation Trustee succeeds to such powers as would have been applicable to the Debtors' officers, directors, partners, members and shareholders, and the Debtors are deemed dissolved. The Bankruptcy Court may issue one or more Orders noting the Effective Date as evidence of the subsidiary debtor's dissolution and the termination of all of the Debtors' employees.

### 7.4 Liquidation Trustee

The Plan Proponents have designated Clear Thinking Group, LLC as the Liquidation Trustee. The salient terms of the Liquidation Trustee's employment, including the Liquidation Trustee's duties and compensation (which compensation shall be negotiated by the Liquidation Trustee and the Plan Proponents), to the extent not set forth in the Plan, shall be set forth in the Liquidation Trust Agreement. In general, the Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Agreement. In general, the Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidation Trust Agreement shall specify the terms and conditions of the Liquidation Trustee's compensation, responsibilities and powers. The duties and powers of the Liquidation Trustee, shall generally include, without limitation, the following:

(a)    To exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any partner, member, officer, director or shareholder of the Debtors with like effect as if authorized, exercised and taken by unanimous action of such partners, members, officers, directors and shareholders; including, without limitation, amendment of the certificates of incorporation and by-laws of the Debtors, merger of any Debtor into another Debtor and the dissolution of any Debtor;

(b)    To maintain escrows and other accounts, make Distributions and take other actions consistent with the Plan and the implementation hereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Debtors or the Liquidation Trustee, even in the event of the dissolution of the Debtors;

(c)    Subject to the applicable provisions of the Plan, to collect and liquidate Liquidation Trust Assets pursuant to the Plan and to administer the winding-up of the affairs of the Debtors;

(d)    To object to any Claims (Disputed or otherwise), including, without limitation, as discussed in Section 8.1 hereof, and to defend, compromise and/or settle any Claims prior to or following objection without the necessity of approval of the Court, and/or to seek Court approval for any Claims settlement, to the extent thought appropriate by the Liquidation Trustee or to the extent such approval is required by prior order of the Court;

(e)    To make decisions in consultation with the Oversight Committee, without further Court approval, regarding the retention or engagement of professionals, employees and consultants by the Liquidation Trust and to pay, from the Wind-down Reserve, the charges incurred by the Liquidation Trust on or after the Effective Date for services of professionals, disbursements, expenses or related support services relating to the winding down of the Debtors and implementation of the Plan, without application to the Court;

(f)    To cause, on behalf of the Liquidation Trust, the Debtors and the Estates, all necessary tax returns and all other appropriate or necessary documents related to municipal, State, Federal or other tax law to be prepared or filed timely;

(g)     To make all Distributions to holders of Allowed Claims provided for or contemplated by the Plan;

(h)     To invest Cash in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Court and as deemed appropriate by the Liquidation Trustee, in accordance with the investment and deposit guidelines set forth in the Liquidation Trust Agreement;

(i)     To collect any accounts receivable or other claims and assets of the Debtors or the Estates not otherwise disposed of pursuant to the Plan, including all Non-Debtor Intercompany Claims;

(j)     To enter into any agreement or execute any document required by or consistent with the Plan and perform all of the obligations of the Debtors or the Liquidation Trustee thereunder;

(k)     To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization approved by the Oversight Committee, any assets that the Liquidation Trustee concludes are of not benefit to creditors of the Estates or, at the conclusion of the Chapter 11 Cases, are determined to be too impractical to distribute;

(l)     To investigate, prosecute and/or settle Litigation Causes of Action (in consultation with the Oversight Committee), participate in or initiate any proceeding before the Court or any other court of appropriate jurisdiction, participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding, litigate or settle such Litigation Causes of Action on behalf of the Liquidation Trust and pursue to settlement or judgment such actions;

(m)     To utilize Liquidation Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs it deems necessary or advisable to insure the acts and omissions of the Liquidation Trustee, and if appropriate, the Oversight Committee.

(n)     To implement and/or enforce all provisions of the Plan;

(o)     To maintain appropriate books and records (including financial books and records);

(p)     To collect and liquidate Liquidation Trust Assets pursuant to the Plan and administer the winding-up of the affairs of the Debtors including, but not limited to, closing the Chapter 11 Cases;

(q)     To pay fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and to file with the Court and serve on the United States Trustee monthly financial reports until such time as such reports are no longer required, a final decree is entered closing these Cases or the Cases and converted or dismissed, or the Court orders otherwise;

(r)     To provide the Oversight Committee, within 20 days after the end of each month, with a monthly report setting forth (i) the receipt and disposition by the Liquidation Trustee of property of the Estates or the Debtors during the prior month, including the disposition of funds in the Liquidation Trust, the Wind-down Reserve and Distribution Fund; (ii) all Disputed Claims resolved by the Liquidation Trustee during such period and all remaining Disputed Claims; (iii) all known material non-Cash assets of the Debtors remaining to be disposed of; (iv) the status of Litigation Causes of Action and other causes of action; (v) an itemization of all expenses the Liquidation Trustee anticipates will become due and payable within the subsequent three months; and (v) the Liquidation Trustee's forecast of cash receipts and expenses for the subsequent three months; and

(s)     To do all other acts or things consistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable with respect to implementing the Plan.

### 7.5     Investments

Prior the Effective Date, the Liquidation Trustee shall obtain a bond reasonably satisfactory to the Oversight Committee. All Cash held by the Liquidation Trustee shall be invested as deemed appropriate by the Liquidation Trustee in accordance with the investment and deposit guidelines set forth in the Liquidation Trust Agreement, after consultation with the Oversight Committee, and need not be invested in accordance with section 345 of the Bankruptcy Code.

### 7.6     Resignation, Death or Removal of Liquidation Trustee

The Liquidation Trustee may resign at any time upon 30 days' written notice, in accordance with Section 13.12 of the Plan, to the Oversight Committee provided that a successor Liquidation Trustee is appointed within the 30-day period. The Oversight Committee, in the exercise of its sole discretion, may remove or replace the Liquidation Trustee upon notice to parties in interest pursuant to Section 13.12 of the Plan and in accordance with the Liquidation Trust Agreement. No successor Liquidation Trustee shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors. Every successor Liquidation Trustee shall execute, acknowledge and file with the Court and deliver to counsel for the Oversight Committee an instrument in writing accepting such appointment hereunder and a bond reasonably satisfactory to the Oversight Committee, and thereupon such successor Liquidation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her successor.

### 7.7     Tax Treatment of Liquidation Trust

The Liquidation Trust is intended to be treated for U.S. federal income tax purposes as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d). For federal income tax purposes, the transfer of Liquidation Trust Assets to the Liquidation Trust will be treated as a transfer of Liquidation Trust Assets from the Debtors to the holders of Allowed General Unsecured Claims, subject to any liabilities of the Debtors or the Liquidation Trust payable from the proceeds of such assets, followed by such holders' transfer of such assets

(subject to such liabilities) to the Liquidation Trust. The holders of Allowed General Unsecured Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust Assets, subject to any liabilities of the Debtors or the Liquidation Trust payable from the proceeds thereof. For the avoidance of doubt, the holders of Allowed General Unsecured Claims are not intended to be treated for federal income tax purposes as receiving Liquidation Trust Assets that are contributed to the disputed claims reserve until such time as the disputed claims reserve makes distributions, in which case (and at which time) the holders of Allowed General Unsecured Claims are intended to be treated as receiving the distributions actually received from the disputed claims reserve, if any. The Liquidation Trust Agreement will: (i) require that the Liquidation Trustee file income tax returns for the Liquidation Trust as a grantor trust; (ii) pay all Taxes owed on any net income or gain of the Liquidation Trust, including net income or gain of the disputed claims reserve, on a current basis from Liquidation Trust Assets; (iii) provide for consistent valuations for all Liquidation Trust Assets by the Liquidation Trustee and holders of Allowed General Unsecured Claims, and require that such valuations be used for all Tax reporting purposes; (iv) provide for the Liquidation Trust's termination no later than five years after the Effective Date unless the Liquidation Trustee elects to extend such period for an additional year as provided for in the Liquidation Trust Agreement or the Bankruptcy Court approves a fixed extension based upon a finding that an extension is necessary for the Liquidation Trust to resolve all Claims, reduce all Liquidation Trust Assets to Cash and liquidate; (v) limit the investment powers of the Liquidation Trustee; and (vi) require that the Liquidation Trust distribute at least annually all net income and the net proceeds from the sale or other disposition of all Liquidation Trust Assets in excess of amounts reasonably necessary to maintain the value of the remaining Liquidation Trust Assets and pay claims and contingent liabilities, including Disputed Claims. The Liquidation Trustee intends to treat the disputed claims reserve as a discrete trust taxed pursuant to Section 641 et seq. of the Internal Revenue Code.

7.8    **Liquidation Trust Interests**

The beneficial interests in the Liquidation Trust shall not be represented by certificates and shall be transferable subject, as applicable, to Bankruptcy Rule 3001(e) and any other provision of law.

7.9    **Dissolution of the Committee; The Oversight Committee**

7.9.1    Dissolution of the Committee

(a)    On the Effective Date, immediately after the formation of the Oversight Committee, the Committee shall dissolve, and the members thereof shall be released and discharged from all duties and obligations arising from or related to their membership (except those duties or obligations which may arise from membership in the Oversight Committee). The professionals retained by the Committee and the respective members thereof shall not be entitled to assert any Fee Claims for any services rendered or expenses incurred on behalf of the Committee after the Effective Date, except for fees for time spent and expenses incurred: (a) in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section